IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02532-CMA-MJW

TRACY BERRY, an Individual,

Plaintiff,

v.

CHERWELL SOFTWARE, LLC, a Delaware Limited Liability Company,

Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S PARTIAL MOTION TO DISMISS[1]**

Presently before the Court is Defendant Cherwell Software, LLC's Partial Motion to Dismiss various claims alleged in Plaintiff Tracy Berry's Amended Complaint ("Complaint"). (Doc. # 22.) Having carefully considered the briefing, record, and applicable law, the Court grants in part and denies in part Defendant's motion for the following reasons.

## I.     BACKGROUND

Plaintiff was employed by Defendant until August 11, 2016, when her employment was terminated. After her termination, Plaintiff brought the instant action under Title VII, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, the Family and Medical Leave Act ("FMLA"), the Equal Pay Act, the Age Discrimination in Employment Act ("ADEA"), and various Colorado laws, including the Colorado Anti-Discrimination Act ("CADA"). In the instant motion, Defendant moves to dismiss portions of Plaintiff's Title

---

[1] On January 24, 2018, Plaintiff voluntarily dismissed her First and Second Claims for Relief (implied contract and promissory estoppel, respectively) (Doc. # 36); therefore, this Court need not address Defendant's request for dismissal of those claims under Rule 12(b)(6).

VII, ADA, ADEA, and CADA claims under Federal Rule of Civil Procedure 12(b)(1)[2], for failure to exhaust administrative remedies. Defendant specifically argues Plaintiff did not include certain allegations in her Charge of Discrimination before the Equal Employment Opportunity Commission ("EEOC Charge" or "Charge") that she presently brings in federal court. The Court agrees in part and disagrees in part as follows.

## II. LAW[3]

Before bringing claims of discrimination or retaliation under Title VII, the ADA, ADEA, and CADA in federal court, a plaintiff must first exhaust her administrative remedies before the EEOC. *Jones v. UPS, Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) (ADA); *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (Title VII and ADEA); *Lucero v. Terumo BCT, Inc.*, No. 14-cv-03061-LTB-NYW, 2015 WL 3619343, at *3 (D. Colo. June 10, 2015) (ADA and CADA); *accord City of Colo. Springs v. Conners*, 993 P.2d 1167, 1170 n.5 (Colo. 2000) (CADA).

As pertinent here, to exhaust administrative remedies, an individual claimant must timely file a charge of discrimination with the EEOC setting forth the facts and nature of

---

[2] Of note, when a party's Rule 12(b)(1) motion challenges the facts upon which subject matter is based, "a district court may not presume the truthfulness of the complaint's factual allegations." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) (citation and quotations omitted). Instead, the court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)," without converting the motion to one for summary judgment under Rule 56. *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995). Moreover, even if the motion was not a factual attack under Rule 12(b)(1), a court may still consider documents outside the Complaint that are both central to Plaintiff's claims and to which Plaintiff refers in her complaint, including Plaintiff's Charge of Discrimination before the EEOC. *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] The Parties spend significant briefing on whether a plaintiff's exhaustion of her administrative remedies is a jurisdictional prerequisite to suit or a nonjurisdictional condition precedent to suit. The distinction is important "only when the defendant has waived or forfeited the issue." *McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199, 210–12 (2007)). This Court need not address the issue because the Defendant has not waived or forfeited the issue in the case. *See, e.g., Jones v. Runyon*, 91 F.3d 1398, 1399 & n.1 (10th Cir. 1996).

2

the charge. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999); 42 U.S.C. § 2000e–5; *see also Jones*, 502 F.3d at 1186 (The "charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]"). When reviewing an EEOC charge for exhaustion purposes, the Court liberally construes it. *Jones*, 502 F.3d at 1186. Nonetheless, each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice that must be raised before the EEOC before resorting to the courts. *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Thus, a plaintiff's claim in federal court is then limited "to the discrete employment actions alleged in the EEOC charge" and "by the scope of the administrative investigation that can reasonably be expected to follow th[at] charge." *Jones*, 502 F.3d at 1186. This requirement serves the purpose of first "giv[ing] the agency the information it needs to investigate and resolve the dispute between the employee and the employer" without resorting to costly and time-consuming litigation. *Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir. 1993) (citation omitted).

With these legal principles in mind, the Court turns to examine whether exhaustion has been satisfied here, i.e. whether Plaintiff's EEOC Charge identifies, or could have reasonably led to the investigation of, the claims being alleged in this case.

### III. ANALYSIS

Plaintiff's EEOC Charge states as follows:

> I was hired by Cherwell Software on December 16, 2013 as a Senior Manager of Product Services. I have been harassed about working from home due to my disabilities since May 2016 and ongoing by a male age 40s Vice-President of Product, and, a male age 40s Vice-President of Development.

> I had approved FMLA to work from home whenever I wanted.
> A male CEO age 40s and a male age 40s Vice-President of
> Development made constant statements from January 2016
> and ongoing that millennials are the future of the company and
> I had to scream and shout to receive a promotion or a raise
> due to my age and not being a millennial. A male age 40s
> Vice-President of Development made comments in March
> 2016 that he was a Jew from Israel and the Jews know
> everything and that Catholics and Christians spend too much
> time in church and not working, as well as, indicated that our
> male age 40s CEO is stupid and thinks he is ok because he
> runs a Christian organization for a hobby even though he
> makes money from talking about cheating on his wife. I was
> paid less than a male age 40s manager of business
> applications, who reported to me, when he was hired in
> February 2016. The male manager of business applications
> made $125,000.00 per year, while I made $100,000.00 per
> year as the Director of Product Services. I was retaliated
> against after reporting discrimination to the male age 40s CEO
> on February 17, 2016, and ultimately terminated on August 11,
> 2016 for no reason other than I had a negative attitude.

(Doc. # 22-1 at 4). Plaintiff's Charge ends with a conclusory sentence stating that she has been discriminated against "because of [her] gender, female, religion, Catholic . . . age, 47 . . . disability . . . gender (wages) . . . and in retaliation for participating in a protected activity." (*Id.*)

### A. Disability Discrimination (Seventh and Fifteenth Claims)

Defendant first argues that Plaintiff's Charge did not include an allegation that Defendant failed to accommodate her disability under the ADA, nor would Plaintiff's Charge have reasonably prompted an investigation into a failure to accommodate claim. Defendant contends that Plaintiff should therefore be precluded from so alleging under her Seventh and Fifteenth Claims in this case. The Court agrees that Plaintiff did not raise a failure-to-accommodate claim in her EEOC Charge and such allegation has not, therefore, been exhausted. To the contrary, the Charge expressly states that Plaintiff *received* an accommodation; it states that Plaintiff was allowed "to work from home due to

4

[her] disabilities" and that she had been approved to "work from home whenever [she] wanted." (*Id.*) The Charge also does not allege that Plaintiff's accommodation was ever changed or revoked. It instead states that she was "harassed . . . due to her disabilities since May 2016 and ongoing by a male age 40s Vice-President of Product and a male age 40s Vice-President of Development." (*Id.*) The Charge further alleges, generally, that she was discriminated against "because of . . . [her] disability." (*Id.*) These allegations are more properly characterized as supporting a disability harassment or hostile work environment claim, not a failure to accommodate claim.

In her response to Defendant's motion to dismiss, Plaintiff concedes that she did not mention a "failure to accommodate" in her EEOC Charge and that her allegations were "couched in terms of 'harassment,'" not a failure to accommodate under the ADA. Yet, she nonetheless asks the Court to essentially infer that she intended to raise a failure to accommodate claim, citing to her initial intake questionnaire in support. This Court will not so infer. Plaintiff's intake questionnaire does not support a claim for a failure to accommodate. Instead, the questionnaire concedes that Plaintiff was approved to work from home, adding that "Craig Baxter and Julie Rich demanded [she] come in the office or questioned any time [she] worked from home." (Doc. # 37-1 at 4.) Plaintiff then explains that she "was constantly harassed about working from home by Craig Baxter, Rami Cohen, etc." (*Id*. at 7.) These "demands," "question[s]," and "harass[ment]" again implicate that Plaintiff alleges harassment, not that she lacked an accommodation or that her accommodation was ever revoked.[4] Although the Court liberally construes Plaintiff's

---

[4] Even if the intake questionnaire had included allegations of a denied accommodation, an employee cannot exhaust a Title VII claim by raising it in an initial intake questionnaire, where the formal charge that formed the basis for the administrative proceedings omitted it. *Green v. JP Morgan Chase Bank Nat. Ass'n*, 501 F. App'x 727, 731–32 (10th Cir. 2012).

Charge, the Court cannot impute facts or acts into the Charge that were not alleged, simply because Plaintiff contends that she *intended* something that she did not actually say. See *Martinez v. Target Corp.*, 384 F. App'x 840, 845 (10th Cir. 2010).

Accordingly, the Court finds that Plaintiff failed to exhaust her failure to accommodate allegations, including her allegations that her accommodation was revoked. These allegations should, therefore, be stricken from the Complaint. The Court limits Plaintiff's Seventh Claim, brought under the ADA, and Thirteenth claim, brought under CADA, to Plaintiff's exhausted allegations—that she suffered from discriminatory harassment and termination because of her disability.

### B. Religious Discrimination (First Sixth[5] and Thirteenth Claims)

Likewise, the Court agrees with Defendant that Plaintiff has not exhausted portions of her religious discrimination claim—in particular her failure-to-accommodate allegations. Although Plaintiff presently alleges that Defendant "took no action to accommodate [her] religious practices," her EEOC charge does not include this allegation. (Doc. # 11 at 7.) Instead, it is limited to a statement indicating that she was harassed because of her religion in March 2016 as well as a general discriminatory termination contention. The Charge states, "[a] male age 40s Vice-President of Development made comments in March 2016 that he was a Jew from Israel and the Jews know everything and that Catholics and Christians spend too much time in church and not working." (Doc. # 22-1 at 4). It then concludes with a general reference to religious discrimination and termination.

Because Plaintiff is required to exhaust her administrative remedies for each individual discriminatory act, her present attempts to expand her religious discrimination

---

[5] Plaintiff's Complaint contains two "Sixth" Claims for Relief. (Doc. # 11 at ¶¶ 278–98.) The Court differentiates between these claims by referring to the first as the "First Sixth Claim" and the second as the "Second Sixth Claim."

claim by including acts never before raised or investigated is improper. For these reasons, the Court orders Plaintiff's failure to accommodate allegations stricken from the Complaint, thereby limiting Plaintiff's First Sixth Claim, brought under Title VII, and Thirteenth Claim, brought under CADA, to her allegations of harassment in March 2016 and discriminatory termination on the basis of religion.

### C. Age Discrimination (Eleventh and Fourteenth Claims)

Defendant next argues that Plaintiff's age discrimination claims should be limited to "the alleged discriminatory failure to promote, failure to give a raise, and termination," essentially conceding that those discrete acts have been exhausted but contending that any others have not. (Doc. # 22 at 7–8.) Plaintiff agrees with Defendant "that she exhausted a discriminatory failure to promote, failure to give a raise, and termination based on age" and states that she "claims nothing further at this time." (Doc. # 37 at 7.) Based on this concession, the Court orders that Plaintiff's Eleventh and Fourteenth Claims are limited to an alleged discriminatory failure to promote, failure to give a raise, and termination.

### D. Gender Discrimination (Fifth and Twelfth Claims)

Defendant further asserts that portions of Plaintiff's gender discrimination claims exceed the scope of her EEOC Charge. Defendant specifically contends that, although Plaintiff's Complaint references multiple "males," "male colleagues," and "male co-workers" who were allegedly paid more than she was, Plaintiff's EEOC Charge only mentioned one comparator—"a male age 40s manager of business applications"— and Plaintiff should, therefore, be so limited in this litigation. The Court, construing the Charge liberally, disagrees.

In her EEOC Charge, Plaintiff alleged that she was paid $25,000.00 less than the "male manager of business applications . . . who was hired in February 2016" and that she was terminated because she reported the discrimination. Although Plaintiff's Charge did not specifically mention any other male colleagues that were paid more than her, the Court finds that her specific reference to disparate pay as compared to at least one other male could reasonably lead to an administrative investigation uncovering additional comparators. The Court therefore finds Plaintiff's claims of gender discrimination, including her reference to additional comparators, has been exhausted and rejects Defendant's request that it limit Plaintiff's Fifth and Twelfth Claims to the single comparator specified in her EEOC Charge.

### E. Retaliation (Second Sixth Claim)

Finally, the Court addresses Defendant's argument that Plaintiff failed to exhaust portions of her retaliation claim. Defendant specifically contends that Plaintiff should be limited to the single act of retaliation alleged in her EEOC Charge—that she was "retaliated against after reporting discrimination to a male age 40s CEO on February 17, 2016, and ultimately terminated." (Doc. # 22-1 at 4). The Court agrees. Despite stating only this one instance of retaliation in her Charge, Plaintiff's Complaint alleges numerous other instances of retaliation—many of which appear unrelated to the February 2016 reporting and termination, including that she suffered retaliation in the form of schedule changes and the revocation of her ability to work from home. Despite knowing about these other alleged instances of retaliation, Plaintiff did not mention them in her EEOC Charge. As such, a reasonable investigation flowing from the instance of retaliation that she *did* mention would not have uncovered them. Acts unrelated to her February 2016 protected activity and subsequent termination have not, therefore, been exhausted and

cannot proceed. The Court therefore grants Defendant's request and limits Plaintiff's Second Sixth Claim, brought under Title VII, to her claim of retaliatory termination after reporting discrimination to the "male age 40s CEO" in February 2016.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART that Defendant Cherwell's Partial Motion to Dismiss (Doc. # 22). The Motion is GRANTED to the extent it requests Plaintiff's First Sixth, Second Sixth, Seventh, Eleventh, Thirteenth, Fourteenth, and Fifteenth Claims be limited as follows:

- The Court limits Plaintiff's Seventh and Fifteenth Claims to Plaintiff's exhausted allegations that she suffered from discriminatory harassment and termination because of her disability.

- The Court limits Plaintiff's First Sixth Claim and Thirteenth Claim to her exhausted allegations of harassment in March 2016 and discriminatory termination on the basis of religion.

- The Court limits Plaintiff's Eleventh and Fourteenth Claims to an alleged discriminatory failure to promote, failure to give a raise, and termination.

- The Court limits Plaintiff's Second Sixth Claim to her exhausted claim of retaliatory termination after reporting discrimination to the CEO in February 2016.

Any attempt at trial to allege discrete acts of discrimination beyond these allegations will be summarily denied.

The Motion is DENIED to the extent it requests that Plaintiff's Fifth and Twelfth Claims be limited to the one comparator set forth in her EEOC Charge.

9

The Court FURTHER ORDERS that Plaintiff shall submit a new Complaint that complies with this Order by September 4, 2018.

DATED: August 22, 2018                BY THE COURT:

                                      _____
                                      CHRISTINE M. ARGUELLO
                                      United States District Judge